UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| LIBERTARIAN PARTY OF VIRGINIA, )<br>ROBERT C. SARVIS, WILLIAM HAMMER )<br>JEFFREY CARSON, JAMES CARR )<br>MARC HARROLD, WILLIAM REDPATH, )<br>WILLIAM CARR, PAUL F. JONES and )<br>BO C. BROWN, )<br>   ) <br>              Plaintiffs, )<br>   )<br>v.   )<br>   )<br>CHARLES E. JUDD, DONALD PALMER )<br>and KIMBERLY T. BOWERS, in their individual )<br>and official capacities as members of the Virginia )<br>State Board of Elections, )<br>   )<br>              Defendants. ) | Civil Action No. 3:14CV479 |

**PLAINTIFFS' RESPONSIVE BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

COME NOW the Plaintiffs and file pursuant to Local Civil Rule 7(F)(1) their Brief in Opposition to Defendants' Motion to Dismiss pursuant to Fed. R.Civ. P. 8(a), 10(b), and 12(b)(6). For the reasons set forth below, the Plaintiffs respectfully request that the Defendants' Motion be denied in all respects.

### I.    STATEMENT OF FACTS

The following facts are taken from the Complaint (Doc. 1) filed in this action, which facts must be accepted as true for purposes of the Defendants' Motion to Dismiss. *Sumner v. Tucker*, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998):

The Plaintiffs in this case include nine (9) candidates for election to the United States Congress from the Commonwealth of Virginia in the upcoming general election in November

2014. Seven of these candidates[1] have been nominated as candidates by the Plaintiff Libertarian Party of Virginia (LP-Virginia), and affiliation of voters formed to influence public policy by, *inter alia*, running candidates for public office (Doc. 1, ¶ 6). Another Plaintiff-candidate, William Carr, is running as an independent (non-party) candidate for the House of Representatives in Virginia's 9th Congressional District (Doc. 1, ¶ 14). Each of these candidates has qualified to have their names placed on the printed ballots to be created by the Virginia State Board of Elections ("State Board") (Doc. 1, ¶¶ 7-15). The Defendants are the members of the State Board, which is charged with overseeing, supervising and coordinating the administration of elections in Virginia (Doc. 1, ¶ 16).

Virginia elections laws make provision for the ordering of candidates upon the printed ballots as follows:

> The ballots shall comply with the requirements of this title and the standards prescribed by the State Board.
>
> \* \* \*
>
> Except as provided for primary elections, the State Board shall determine by lot the order of the political parties, and the names of all candidates for a particular office shall appear together in the order determined for their parties. In an election district in which more than one person is nominated by one political party for the same office, the candidates' names shall appear alphabetically in their party groups under the name of the office, with sufficient space between party groups to indicate them as such. For the purpose of this section and § 24.2-640, except as provided for presidential elections in § 24.2-614, "recognized political parties" shall be treated as a class; the order of the recognized political parties within the class shall be determined by lot by the State Board; and the class shall follow the political parties as defined by § 24.2-101 and precede the independent class. Independent candidates shall be treated as a class under "Independent;" their names shall be placed on the ballot after the political parties and recognized

---

[1] The LP-Virginia candidates include Robert C. Sarvis for Senate (Doc. 1, ¶7), William Redpath for the House of Representatives in the 10th District (Doc. 1, ¶ 8),William Hammer for the House of Representatives in the 6th District (Doc. 1., ¶ 9), James Carr for the House of Representatives in the 7th District (Doc. 1, ¶ 10), Jeffrey Carson for the House of Representatives in the 8th District (Doc. 1, ¶ 11), Marc Harrold for the House of Representatives in the 11th District (Doc. 1, ¶ 12), Paul F. Jones for the House of Representatives in the 5th District (Doc. 1, ¶ 13), and Bo Conrad Brown for the House of Representatives in the 4th District (Doc. 1, ¶ 15).

>political parties; and where there is more than one independent candidate for an office, their names shall appear alphabetically.

Va. Code § 24.2-613 (¶3) (Doc. 1, ¶ 18).

Thus, Va. Code § 24.2-613 establishes that candidates for an office shall be printed in the following order: (1) first and at the top of the ballot are candidates of "political parties", and the order of those candidates is determined by lot conducted by the State Board; (2) after all the candidates of "political parties" are listed, the candidates of "recognized political parties" are listed, their order determined by lot by the State Board; and (3) at the bottom of the ballot are listed "independent candidates", who are to be listed alphabetically. The State Board has issued a publication summarizing the ballot placement ordering as follows:

>The candidates of political parties appear first on the ballot in the order determined by a drawing conducted by the State Board of Elections. Candidates representing any other recognized political party (see Item XI on Page 12 herein), if any, appear next on the ballot in the order determined by a second drawing conducted by the State Board of Elections. Independent (non-party) candidates appear in alphabetical order after the aforementioned political party candidates.[2]

(Doc. 1, ¶ 18).

The statutes also define a "political party" and a "recognized political party." The former is defined as "an organization of citizens of the Commonwealth which, at either of the two preceding statewide general elections, received at least 10 percent of the total vote cast for any statewide office filled in that election." Va. Code § 24.2-101 (Doc. 1, ¶ 19). A "recognized political party" is defined as "as an organization that, for at least six months preceding the filing of its nominee for the office, has had in continual existence a state central committee composed of registered voters residing in each congressional district of the Commonwealth, a party plan and bylaws, and a duly elected state chairman and secretary." Va. Code § 24.2-613 (¶ 2). LP-

---

[2] http://www.sbe.virginia.gov/Files/BecomingACandidate/CandidateBulletins/2013%20STATEWIDE.pdf

Virginia is a "recognized political party" under these definitions, but not a "political party" eligible for placement at the top of election ballots.

## II. STANDARD OF REVIEW

Although the Defendants have raised Fed. R. Civ. P. 8(a) and 10(b) as grounds for dismissal, the substance of their motion is that the Complaint fails to state a claim for relief and is subject to dismissal under Fed. R. Civ. P. 12(b)(6). However, they have claimed that there were insufficient facts pleaded to survive this Court's scrutiny as required under what has become known as the *Iqbal/Twombly* standard.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at *Bell Atlantic Corp. v.* Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*.

"Two working principles underlie our decision in *Twombly.* First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

4

with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955.Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157–158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2)." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Thus, the standard under a Rule 8 motion to dismiss brought under a 12(b)(6) moniker is still whether there are sufficient facts pleaded to put the defendant on fair notice of the allegations against him and which, if accepted as true, are plausible and rise above mere speculation. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Here, the defense claims there are no facts pleaded which meet this standard. The plaintiff respectfully submits that there are a plethora of facts pleaded in this complaint which support the argument that these two statutes are unconstitutional on their face. For example, paragraphs 6-23 are all factual and establish the nature of the statute, the actual content of the statute, and the plaintiffs' standing to challenge it. Likewise, paragraphs 38 through 44 of the complaint contain nothing but factual allegations, these in support of the ballot signature allegations in Count II. Each of these counts contain factual information which establish the content of the statute, the standing of the plaintiff, and the legal support for the position that the statutes violate the First and Fourteenth Amendments to the US Constitution. Thus, there are sufficient facts pleaded in this Complaint to meet the standards of *Iqbal/Twombly*.

**Standards for 12(b)(6) Motions**

In assessing the merits of a Rule 12(b)(6) motion to dismiss, a district court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md.,* 684 F.3d 462, 467 (4th Cir.2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 637 F.3d 435, 440 (4th Cir.2011)). To survive a Rule 12(b)(6) motion to dismiss, a complaint need only establish "facial plausibility" by pleading factual content that allows the court to draw the reasonable inference that the plaintiff is entitled to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992). "Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* Furthermore, when as here, a Rule 12(b)(6)motion is testing the sufficiency of a civil rights complaint, "[the Court] must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*" *Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir.1988) (internal quotation marks omitted) (emphasis added).

In this case, each Count is supported by facts in support of the argument that each of these statutes violates the plaintiff's First and Fourteenth Amendment rights. The defense is

6

attempting to do that which is prohibited by the Fourth Circuit, resolving factual contests between the parties in a civil rights complaint.

In an abundance of caution, however, the plaintiff address the merits of their case briefly below.

## II. ARGUMENT

### A. Count I
### The Complaint States a Claim For Relief That
### Virginia's Ballot Placement Statute is Unconstitutional

Count I of the Complaint alleges that Va. Code § 24.2-613, which directs the Defendants on how they must order the names on election ballots for general election, is unconstitutional under the First and Fourteenth Amendments to the United States Constitution (Doc. 1, ¶¶ 17-36). Under that statute, the top placement on the ballot for each contested office is assigned to the candidates of "political part[ies]", meaning those parties which received at least 10% of the vote for a statewide office in either of the previous two elections. Va. Code § 24.2-101. LP-Virginia and its candidates and independent candidates are not eligible for inclusion as a "political party" and will be assigned a lower spot on the ballot than the candidate from a "political party." As a practical matter, this means that the candidate(s) of the Republican and Democratic Parties will be placed above the Plaintiff-candidates on each of the ballots drawn up by the Defendants.

As alleged in the Complaint, "the provisions governing the assignment of positions on general election ballots confer an unfair 'positional advantage' to major parties and their candidates relative to other parties and candidates, like the LP-Virginia and the individual Plaintiffs in this case." (Doc. 1, ¶ 23). The Complaint further alleges that placement at or near the top of an election ballot confers an advantage over lower-placed candidates (Doc. 1, ¶¶ 24-25), and "an electoral system that is designed to ensure that a specific class of candidates always

has a ballot position more favorable than other classes of candidates is inherently unconstitutional." (Doc. 1, ¶ 26). "In Virginia, the positional bias favoring major parties is expressly stated in Va. Code § 24.2-613 (¶ 3); 8herefore, it is clear that the Virginia legislature intended to provide an advantage to the candidates of major parties." (Doc. 1, ¶ 27).

It is well-established that a denial of equal access to the ballot is protected by both the Equal Protection Clause of the Fourteenth Amendment and by the First Amendment. *Munro v. Socialist Workers Party*, 479 U.S. 189, 193-94 (1986); *Green Party of Tennessee v. Hargett*, 953 F. Supp. 2d 816, 857 (M.D. Tenn. 2013). "Access" embodies not simply appearance of a candidate's name on the ballot, but also the manner and order in which candidates are displayed on election ballots. State ballot practices which provide a "voting cue" can violate both the Fourteenth and First Amendments. *Rosen v. Bowen*, 970 F.2d 169, 175 (6th Cir. 1992). If those voting cues provide an advantage to candidates of one class at the expense of candidates of another class, the state practice will violate the guarantee to equal protection unless justified by a substantial governmental interest. *McLain v. Meier*, 637 F.2d 1159, 1166-67 (8th Cir. 1980). Additionally, the basic First Amendment associational rights of voters to support the candidates of their choice are necessarily burdened by restrictions on ballot access. *Rosen*, 970 F.2d at 176.

Numerous cases have considered and struck down state statutes and practices which, like Va. Code § 24.2-613, give a ballot placement advantage to the candidates of incumbent or major political parties at the expense of minor party and independent candidates. Recently, in *Green Party of Tennessee v. Hargett*, *supra*, the court struck down a Tennessee law which required the candidate of the "majority party" (defined as the political party with largest number of seats in the State's general assembly)[3] for an office be listed first on general election ballots, the

---

[3] Tenn. Code Ann. § 2-1-104(11).

candidate of the "minority party" (defined as the political party with the second most seats in the general assembly)[4] listed next, and any other minor party or independent candidates would follow. After an exhaustive review of the empirical studies of the effects of ballot placement, 953 F. Supp. 2d at 839-41, the court concluded that candidates placed in the top positions on election ballots have an advantage over the lower positioned candidates. *Green Party of Tennessee*, 953 F. Supp. 2d at 860. It noted that this advantage has been recognized by the Supreme Court in a case from Virginia:

> Research has shown that placement at the top of a ballot often confers an advantage to candidates so positioned. The classic study of the phenomenon is H. Bain & D. Hecock, *Ballot Position and Voter's Choice: The Arrangement of Names on the Ballot and its Effect on the Voter* (1957). See also Note, *California Ballot Position Statutes: An Unconstitutional Advantage to Incumbents*, 45 S. Cal. L.Rev. 365 (1972) (listing other studies); Note, *Constitutional Problems with Statutes Regulating Ballot Position*, 23 Tulsa L.J. 123 (1987). Some studies have suggested that the effect of favorable placement varies by type of election, visibility of the race, and even the use of voting machines. *See id.* at 127. While the research is not conclusive, it is reasonable to assume that candidates would prefer positions at the top of the ballot if given a choice.

*Morse v. Republican Party of Virginia*, 517 U.S. 186, 197 n. 13 (1996). In the absence of any justification for the positioning scheme adopted by Tennessee, the court concluded that the statute violated the constitutional rights of candidates and voters to equal treatment in the listing of candidates and required that all candidates be arranged alphabetically on ballots. *Green Party of Tennessee*, 953 F. Supp. 2d at 860. This case was reversed and remanded due to the lack of factual development in the trial court.[5]

The Tennessee court relied on several other cases reaching the same conclusion. In *McLain v. Meier*, *supra*, the court struck down a North Dakota statute that reserved the first

---

[4] Tenn. Code Ann. § 2-1-104(12).
[5] While this decision was reversed by the Sixth Circuit on August 22, 2014, it is important to note that the Court reversed and remanded due to the lack of factual development in the trial court.

position on election ballots for candidates from the party receiving the most votes at the prior congressional election, the next position to the party with the second most votes, and relegating independent candidates to the last position. The *McLain* court also concluded that weight of the empirical studies on ballot placement effects demonstrate that an advantage is given to the candidates given the first position on election ballots. *Id.*, 637 F.2d at 1166. Having found that the statute guaranteeing positional primacy to the majority parties, the court went on to find the statute unconstitutional reversing the district court's ruling that the discrimination was justified:

> The district court, . . ., reasoned that North Dakota has an interest in making the ballot as convenient and intelligible as possible for the great majority of voters. This justification virtually admits that the state has chosen to serve the convenience of those voters who support incumbent and major party candidates at the expense of other voters. Such favoritism burdens the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment.

*Id.* at 1167.

Numerous other courts, federal and state, have recognized that candidates obtain an advantage by being higher-listed on a ballot and have declared laws and practices reserving favorable positions to the established, majoritarian party candidates unconstitutional. *See Graves v. McElderry*, 946 F. Supp. 1569, 1581 (W.D. Okla. 1996); *Culliton v. Board of Election Commissioners*, 419 F. Supp. 126, 129 (N.D. Ill. 1976); *Akins v. Secretary of State*, 154 N.H. 67, 72-73, 904 A.2d 702, 706 (2006); *Gould v. Grubb,* 14 Cal.3d 661, 122 Cal.Rptr. 377, 536 P.2d 1337, 1345–46 (Cal.1975).

In light of this substantial authority, the Defendants' argument that the Complaint does not state a "plausible" claim that Va. Code § 24.2-613 is unconstitutional must be rejected. To the extent the defense argument is based upon the idea that the Plaintiffs do not suffer any injury by being relegated to subordinate ballot positions, while the major parties are given "first-billing"

on election ballots, this argument is answered by the conclusion of numerous courts, including the Supreme Court, that constitutionally-significant advantage is conferred by being placed first on election ballots. Indeed, the Defendants admit as much in their brief, writing that "[t]he Seventh Circuit . . . previously decided that superior ballot placement was an advantage, and that a local practice in which election officials gave ballot placement priority to members of their own party violated the Fourteenth Amendment. *See Sangmeister v. Woodard*, 565 F.2d 460, 467 (7th Cir. 1977)." (Doc. 9, p. 6).

At the very least, the character and magnitude of the injury resulting from ballot positional advantage is a question of fact, *McLain*, 637 F.2d at 1166, which cannot be resolved against the Plaintiffs at the motion to dismiss stage.[6] As to the defendants' argument that the Plaintiff-candidates cannot make a claim to receiving the "windfall vote" attendant a preferred ballot placement, the point is not that they are claiming a right to a windfall vote, but that all candidates be treated equally and that the established, majoritarian parties may not *always* receive preferred ballot positions. As the court held in *McLain*, 637 F.2d at 1167, a state may not "serve the convenience of those voters who support incumbent and major party candidates at the expense of other voters. Such favoritism burdens the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment."

There is no merit to the Defendants' claim that the positional preference for the established political parties is justified by the need to avoid voter "confusion." While this interest exist in the abstract, it is not implicated here because Virginia employs a "block or office ballot", under which candidates are grouped on the ballot by the office contested. *See Green Party of Tennessee*, 953 F. Supp. 2d at 839. This is to be contrasted with a "party block" ballot,

---

[6] The Defendants assert *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997), and *Jenness v Fortson*, 403 U.S. 431, 441(1971), ruled that there is no significant harm resulting from ballot ordering. But nothing in *Timmons* or *Jenness* in any way addresses the effects of ballot position.

under which candidates are grouped by party. A "party block" ballot was involved in the primary case relied upon by the Defendants, *Board of Election Commissioners of Chicago v. Libertarian Party of Illinois*, 591 F.2d 22 (7th Cir. 1979), where the court upheld a plan which granted the two "established parties" the top two lines on lines on elections ballots. However, the ballots at issue there arranged the candidates on a grid on which each party's entire slate of candidate occupied an entire row (allowing for straight party voting). *Id.* at 25, n. 5. In light of this ballot format, there was cause for concern about confusion:

> If ballot placement of all political parties were determined by lottery, the likely result would be large gaps on the ballot between the names of competing candidates for numerous county and judicial offices, which would confuse may voters and perhaps in practical effect cause some voters not to exercise a choice for the offices involved. In addition there was evidence that leaving gaps between candidates would make it more difficult for election judges to read and record results.

*Id.* at 26.

This danger is non-existent here. On Virginia ballots, candidates are grouped by office and voters are tasked with making a choice as to each office separately. If the order of candidates within each group is determined randomly by lot, or by some other neutral criteria such as alphabetical order, there will be no problems of the kind which led to the decision in *Libertarian Party of Illinois*. Unlike the situation in that case, the ballot position rule established by Va. Code § 24.2-613 (¶ 3) does not serve to improve the quality of elections, but serves only to provide an advantage to the major parties, entrenching their hold on the political system at the expense of minor party and independent candidates. As the court held in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 589 (6th Cir. 2006), "[a] burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment. It discriminates against those candidates-and of

particular importance-*against* those voters whose political preferences lie outside the existing political parties."

In light of the substantial precedent striking down ballot placement statutes and practices substantially the same as the one mandated by Va. Code § 24.2-613 (¶ 3), the claim set forth in Count I of the instant Complaint rises well above the "plausibility" standard under Fed. R. Civ. P. 12(b)(6). The Defendants' arguments that there are insufficient allegations to support the claim that the ballot preference given the majority parties is unconstitutional are either soundly rebutted by the great weight of authority. Moreover, to accept the Defendants' arguments that the Plaintiffs are not harmed by the ballot placement required by Va. Code § 24.2-613 (¶ 3) or the placement is justified by a significant state interest would require a resolution of fact questions that is not proper at this stage of the proceedings. Therefore, the motion to dismiss Count I must be denied.

### C.

### This case is not ripe for dismissal as the factual record must be developed

Under the contemporary *Anderson-Burdick* framework, the first and central question is whether the ballot placement statute, as applied, imposed a severe burden on the exercise of the Plaintiffs First Amendment rights. To answer this question, the Court must evaluate the effects of the ballot placement on the plaintiffs keeping in mind that other aspects of Virginia's ballot-access scheme might operate so as to make the ballot placement scheme either more harsh or more simplified. *See Blackwell*, 462 F.3d at 586.

Whether a voting regulation imposes a severe burden is a question with both legal and factual dimensions. *See Blackwell*, 462 F.3d at 587 (listing factors to consider). If a restriction does not "affect a political party's ability to perform its primary functions," such as organizing, recruiting members, and choosing and promoting a candidate, the burden typically is not considered severe. *Id.* Virginia's ballot-access rules strike at the very heart of the plaintiffs' primary functions and no doubt constrain their opportunities to effect political change. But this

13

fact alone does not permit the Court to conclude that the burden is severe; the Court must also consider "the effect of the regulations on the voters, the parties and the candidates" and "evidence of the real impact the restriction has on the [political] process." *Id.* The record—which was has not been substantially developed yet—does not provide the information this Court would need to grant the defendant's motion to dismiss.

As the Sixth Circuit noted this past August:

> As the district court recognized, studies do not definitively establish whether a party's or candidate's position on the ballot influences voter behavior. *Green Party II*, 953 F. Supp. 2d at 859–60. Some conclude that it likely does, some conclude that it may, but only to a small degree or only in nonpartisan elections, and some conclude that it likely does not. Moreover, as the defendants argued, some studies have concluded that the most important factor affecting voter decision in a partisan election—like Tennessee's general election—is party affiliation. Ultimately, the district court chose to credit studies, as well as cases from other jurisdictions, finding that preferential ballot-placement statutes confer a benefit on candidates listed first or at the top of the ballot. In particular, the court explained that it was "rel[ying] upon the Eighth Circuit's ruling in *McLain* that despite differences in the studies, 'many studies report a finding of some ballot advantage in the top position.'" *Id.* at 860 (quoting 637 F.2d at 1166 n.15).

*Green Party of Tennessee v. Hargett,* File Name: 14a0201p.06, at 19 (6th Cir. 2014)

### B.
### Count II
### The Ballot Signature Requirement Allegation

Count II of the Complaint claims that Virginia Code § 24.2-506(A), which prescribes the requirements that any political candidate who is not from a "party" as that term is defined in Virginia Code § 24.2-100 must collect a certain number of signatures from qualified voters, depending on the office sought, whereas a party[7] candidates are not required to obtain any signatures at all. The defense suggests that because the General Assembly has a justification for

---

[7] Currently on Democrats and Republicans

such legislative discrimination that they are entitled to judgment as a matter of law.  As submitted, *supra,* legislative enactments that clearly favor the established parties cannot be deemed politically neutral.  As the court said in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006), "[T]he State may not be a wholly independent or neutral arbiter as it is controlled by the political parties in power, which presumably have an incentive to shape the rules of the electoral game to their own benefit." (quoting *Clingman v. Beaver*, 544 U.S. 581, 125 S. Ct. 2029, 2044, 161 L.Ed.2d 920 (2005) (O'Conner, J., concurring)).

The ability of a political party to appear on the general election ballot affects not only the party's rights, but also the First Amendment free speech and associational rights of voters.  *See Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 214, 107 S. Ct. 544, 93 L.Ed.2d 514 (1986)(noting the fundamental importance of "[t]he right to associate with the political party of one's choice")

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 87 L.Ed.2d 313 (1985). "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75, 145 L.Ed.2d 1060 (2000).

Equal Protection applies whenever an individual is treated differently from others who are similarly situated "in all material respects." *TriHealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783,

790 (6th Cir. 2005)[8]. "Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational." *Id*.

The courts have repeatedly held that all candidates for the same office must be treated the same. *See Gjersten v. Board of Election Comm'rs*, 791 F.2d 472 (7th Cir. 1986) (Holding unconstitutional a statute requiring different numbers of signatures for candidates for the same or similar offices.); *Rockefeller v. Powers*, 909 F. Supp. 863 (E.D. N.Y. 1995) (Striking petition requirement that discriminated between candidate for the same office.) *See, also*, *Bullock v. Carter*, 405 U.S. 134, 148, 92 S. Ct. 849, 31 L. Ed. 2d 92, (1972) (finding no justification for filing fees in party primary where "candidates for offices requiring statewide primaries are generally assessed at a lower rate than candidates for local offices").

Virginia Code § 24.2-506(A) thus limits the non "party" access to the ballot and shows favoritism to the two well-established political parties by eliminating the requirement that their candidates obtain thousands of signatures from qualified voters in order to appear on the ballot, denying the Plaintiffs the equal protection under the laws and their First Amendment speech and associational rights without even a legitimate state interest in doing so.

As pleaded in paragraph 16 of the Complaint, "party" is defined by Virginia Code § 24.2-101, *inter alia*, as: "…an organization of citizens of the Commonwealth which, at either of the two preceding statewide general elections, received at least 10 percent of the total vote cast for any statewide office filled in that election."

Because the only political organizations which have met the criteria found in Virginia Code § 24.2-101 to be a "party" are the Republican and Democratic Parties, unless a candidate is

---

[8] See also *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir.1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated.") (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

a Republican or Democrat, they are subjected to the burden of having to obtain the above number of signatures or risk being left off the ballot.

In the case of the plaintiffs seeking Congressional seats, they were required to obtain 1,000 signatures each.

Robert Sarvis, as the candidate for the United States Senate, is required to not only obtain "…10,000 signatures, but the signatures of at least 400 qualified voters from each congressional district in the Commonwealth." Virginia Code § 24.2-506(A)

By contrast, the Republican or Democratic parties, being "parties" as defined in Virginia Code § 24.2-100, can each unilaterally place a candidate on the ballot who has multiple misdemeanor drug or sex offense convictions and who would not be able to obtain even a single signature other than his own on a petition provided that he or she was otherwise qualified to vote in Virginia.

The ability of a political party to appear on the general election ballot affects not only the party's rights, but also the First Amendment free speech and associational rights of voters. *See Tashjian v. Republican Party of Conn.,* 479 U.S. 208, 214, 107 S. Ct. 544, 93 L.Ed.2d 514 (1986)(noting the fundamental importance of "[t]he right to associate with the political party of one's choice")

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 87 L.Ed.2d 313 (1985). "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination,

whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75, 145 L.Ed.2d 1060 (2000).

Equal Protection applies whenever an individual is treated differently from others who are similarly situated "in all material respects." *TriHealth, Inc. v. Bd. Of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)[9]. "Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational." *Id*.

The courts have repeatedly held that all candidates for the same office must be treated the same. *See Gjersten v. Board of Election Comm'rs*, 791 F.2d 472 (7th Cir. 1986) (Holding unconstitutional a statute requiring different numbers of signatures for candidates for the same or similar offices.); *Rockefeller v. Powers*, 909 F. Supp. 863 (E.D. N.Y. 1995) (Striking petition requirement that discriminated between candidate for the same office*.) See, also*, *Bullock v. Carter*, 405 U.S. 134, 148, 92 S. Ct. 849, 31 L. Ed. 2d 92, (1972) (finding no justification for filing fees in party primary where "candidates for offices requiring statewide primaries are generally assessed at a lower rate than candidates for local offices").

Virginia Code § 24.2-506(A) thus limits the non "party" access to the ballot and shows favoritism to the two well-established political parties by eliminating the requirement that their candidates obtain thousands of signatures from qualified voters in order to appear on the ballot, denying the Plaintiffs the equal protection under the laws and their First Amendment speech and associational rights without even a legitimate state interest in doing so.

---

[9] See also *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir.1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated.") (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

## CONCLUSION

Because this is a Motion to Dismiss, all well pleaded facts must be taken as true. Because the Supreme Court has already made clear that the burden on the plaintiffs are a combination of legal and factual determinations, *supra*, the Motion to Dismiss is not well placed at this time and, therefore, this case should move forward so this Court can hold an evidentiary hearing on the burdens placed on the plaintiff and the justification submitted by the defendants for the regulations in place.

WHEREFORE the plaintiffs move this Court to deny the Motion to Dismiss propounded by the defendants in this case and allow the case to move on to discovery and further motions as may be necessary.

**ROBERT SARVIS, ET AL**

/s/David P. Morgan

David P. Morgan, VSB #70211
Marcari, Russotto, Spencer & Balaban, PC
1 Park West Circle, Suite 101
Midlothian, VA 23114
(804)307-6584
davidm@mrslawfirm.com

Attorney for Plaintiffs
Participating Attorney for
THE RUTHERFORD INSTITUTE

## CERTIFICATION

I certify that I caused to be delivered a copy of this Memorandum in Opposition to the defendant's Motion to Dismiss the Complaint on October 13, 2014 by this Courts ECF/NEF system.

/s/David P. Morgan